# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **DALE LEE SAVAGE,** ) | |
| ) | |
| **Claimant,** ) | |
| ) | |
| vs. ) | Case No. CV-13-S-0957-S |
| ) | |
| **CAROLYN W. COLVIN, Acting** ) | |
| **Commissioner, Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Claimant, Dale Lee Savage, commenced this action on May 20, 2013, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying his claim for a period of disability, disability insurance, and supplemental security income benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ: improperly considered the opinion of his treating physician; improperly determined his residual functional capacity without the benefit of a medical source opinion or an assessment by a medical expert; failed to engage in a function-by-function analysis of his impairments; and improperly considered his obesity. Upon review of the record, the court concludes that these contentions lack merit, and that the Commissioner's ruling is due to be affirmed.

**A.     Treating Physician**

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. (alteration supplied). Social Security regulations also provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be

supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 404.1527(d). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments."). Additionally, the ALJ is not required to accept a conclusory statement from a medical source — even a treating source — that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. § 416.927(e).

Dr. William Edge drafted a letter "To Whom It May Concern" on January 30, 2012, stating:

> Dale Savage has applied for occupational disability. He has been followed here for several years with chronic morbid obesity, diffuse osteoarthritis, diabetes mellitus, hypertension, recurrent bouts of superficial and deep thrombophlebitis. He has chronic pain from back deterioration and lumbosacral disc disease. He has a contracture of his left hand from burn scarring and has deformities of his chest from third degree burns in 2004. At present, I consider him to be significantly disabled. He is in a rehabilitation program and has lost weight, but still weighs 260 some odd pounds and continues to be morbidly obese. I would recommend he be granted disability because of his osteoarthritic damage and contracture of his left hand. If he stands for any length of time, he has dependent edema from venous stasis disease in his lower extremities. I certainly think his health problems would prohibit him

from maintaining a regular job.[1]

The ALJ afforded Dr. Edge's assessment "good" weight, but still less weight than he afforded the opinion of Dr. Prameela Goli, the consultative examiner, who found a lesser range of functional limitations.[2] The ALJ relied primarily upon Dr. Edge's inconsistent treatment history of claimant as a reason to discredit the doctor's assessment. The last time Dr. Edge had treated plaintiff before writing the "To Whom It May Concern" letter was in February of 2011, when claimant was treated for dizziness, blurred vision, and elevated blood sugar.[3] Before that, claimant last saw Dr. Edge in July of 2010.[4] Claimant attempts to discount the importance of the temporal gap between the date of his last visit with Dr. Edge and the date of Dr. Edge's disability letter by pointing out that he was examined by Dr. Anne Schmidt, upon referral from Dr. Edge, in December of 2011, only one month before Dr. Edge's letter. Claimant asserts that, because of Dr. Schmidt's evaluation, Dr. Edge's January 2012 letter was "based on contemporaneity and consistency of treating notes."[5] The only record in the file from Dr. Schmidt is a one-page Physical Exam Form dated December 5, 2011. The court could not make out all of Dr. Schmidt's handwritten

---

[1] Tr. 370.
[2] Tr. 29.
[3] Tr. 321, 330-35.
[4] Tr. 327.
[5] Doc. no. 12 (claimant's brief), at 12.

notes, but there is no indication that Dr. Schmidt shared her notes with Dr. Edge. Even if Dr. Edge had reviewed Dr. Schmidt's notes, that would not negate the substantial gaps in Dr. Edge's own treating relationship with claimant.

The ALJ also reasoned that Dr. Edge's treatment notes did not support his assessment of disability. On the whole, the record supports this conclusion. On July 6, 2009, claimant reported knee pain at a level 5-6.[6] On July 14, 2009, claimant reported level 7 knee pain and swelling.[7] On that same date, Dr. Edge noted that claimant's functional status was "normal," meaning that he did not use a cane, walker, or wheelchair.[8] On July 1, 2010, claimant reported level 10 pain and swelling in both legs.[9] On that same date, Dr. Edge again noted that claimant's functional status was "normal." He also stated that claimant was in moderate distress over the swelling in his leg. On examination, there was moderate deformity in both knees. Claimant was advised to continue wearing compression hose and to lose weight.[10] On February 14, 2011, claimant's functional status again was "normal," and there were no musculoskeletal findings.[11] As an initial matter, the court notes that some of those records pre-date claimant's June 21, 2010 onset date. Moreover, while there were

---

[6] Tr. 323.
[7] Tr. 322.
[8] Tr. 329.
[9] Tr. 324.
[10] Tr. 327.
[11] Tr. 330.

some occasions on which claimant experienced severe pain and swelling, there is no indication that those symptoms endured at the severe level for at least a year. Most importantly, the most recent treatment note in Dr. Edge's records before he wrote the disability letter indicated *no musculoskeletal findings.* The ALJ's residual functional capacity finding incorporates significant limitations that are consistent with some of the problems noted in Dr. Edge's treatment records, but substantial evidence supports the ALJ's decision to reject Dr. Edge's conclusory disability opinion.

**B.     Medical Source Opinion/Consultative Examination**

Claimant next argues that the ALJ erred by assessing his residual functional capacity without the benefit of a medical source opinion from a treating source or medical expert, or an additional consultative examination. It is true that the ALJ

> has an obligation to develop a full and fair record, even if the claimant is represented by counsel. *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981). The ALJ is not required to seek additional independent expert medical testimony before making a disability determination *if the record is sufficient and additional expert testimony is not necessary for an informed decision*. *Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999) (holding the record, which included the opinion of several physicians, was sufficient for the ALJ to arrive at a decision); *Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988) (holding the ALJ must order a consultative exam when it is necessary for an informed decision).

*Nation v. Barnhart,* 153 F. App'x 597, 598 (11th Cir. 2005) (emphasis supplied). Furthermore, claimant bears the ultimate burden of producing evidence to support his disability claim. *See Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003) (citing

6

20 C.F.R. §§ 416.912(a), (c)).[12]

The court concludes that the record in this case was sufficient, even absent any additional consultative report or medical source statement, for the ALJ to arrive at an informed decision. The medical record includes thorough records from claimant's treating providers, the report of a consultative examiner,[13] and the Physical Residual Functional Capacity Assessment of a state agency physician.[14]

### C.     Specificity of the ALJ's Findings

Claimant next argues that the ALJ's functional findings lack the specificity required by Social Security Rulings 83-12 and 96-8p.

#### 1.     Social Security Ruling 83-12

Social Security Ruling 83-12 provides the following guidelines for evaluating claims in which a claimant requires the option to alternate between sitting and standing during a workday:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged

---

[12] Claimant acknowledges that "[t]here is no express requirement for a medical source opinion (MSO) or RFC assessment to be of record in order for the ALJ to make RFC findings," but he nonetheless implies that it would have been a good idea for the ALJ to obtain such an assessment in this case. Doc. no. 12 (claimant's brief), at 13 (alteration supplied).

[13] Tr. 287-90.

[14] Tr. 291-98.

>sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
>
>There are some jobs in the national economy — typically professional and managerial ones — in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base.

SSR 83-12, at 3 (alteration supplied).

The ALJ's decision was consistent with this ruling. In his residual functional capacity finding, the ALJ stated that claimant "should be able to change positions from sitting to standing but he would remain at the workstation and continue to function."[15] The ALJ used a vocational expert, as required by the rule, to determine what impact the sit-stand option would have on claimant's ability to do work that exists in significant numbers in the national economy. The ALJ's hypothetical question to the vocational expert during the administrative hearing included the same limitation as the ALJ's residual functional capacity finding.[16] Even with that

---

[15] Tr. 27.
[16] Tr. 63-64.

8

limitation, the vocational expert determined that there would be jobs available for claimant.[17]

### 2. Social Security Ruling 96-8p

Security Ruling 96-8p states, in pertinent part, as follows:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.
>
> Symptoms. In all cases in which symptoms, such as pain, are alleged, the RFC assessment must:
>
> • Contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate;
>
> • Include a resolution of any inconsistencies in the evidence as a whole; and
>
> • Set forth a logical explanation of the effects of the

---

[17] Tr. 64. Claimant also appears to raise a substantive challenge to the ALJ's determination that a sit-stand option would enable him to perform substantial gainful work activity. *See* doc. no. 12 (claimant's brief), at 17 ("There is nothing to indicate that Plaintiff would obtain any relief by being on or off his feet especially in the context of ongoing work in either posture and ongoing pain . . . ."). The record simply does not support that challenge. Claimant himself testified during the administrative hearing that alternating positions helped alleviate his pain. Tr. 43-44.

> symptoms, including pain, on the individual's ability to work.
>
> The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.  In instances in which the adjudicator has observed the individual, he or she is not free to accept or reject that individual's complaints solely on the basis of such personal observations. . . .
>
> Medical opinions. The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.
>
> Medical opinions from treating sources about the nature and severity of an individual's impairment(s) are entitled to special significance and may be entitled to controlling weight.  If a treating source's medical opinion on an issue of the nature and severity of an individual's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the adjudicator must give it controlling weight.  (See SSR 96-2p, "Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner.").

SSR 96-8p.

Claimant asserts that the following italicized language from two sentences of the ALJ's residual functional capacity finding lacks the specificity required by SSR 96-8p: *i.e.,* (1) "He is right hand dominant, but has *some limitation of grip strength* in the left upper extremity due to a flexure/contraction," and (2) "He should *be able to change positions from sitting to standing* but he would remain at the workstation and

continue to function."[18] The court is not persuaded by claimant's conclusory arguments. The ALJ explained later in his decision that the limitations on claimant's grip strength were due to the burns on his hand and resulting flexure/contraction, and that the need to alternate sitting and standing was due to claimant's leg, knee, and back pain, as well as his leg swelling.[19] Those conditions were well-explained and well-supported by the medical evidence, and the limitations assessed by the ALJ were sufficiently specific to permit the vocational expert to determine whether claimant was capable of performing work existing in significant numbers in the national economy.

**D.  Obesity**

Claimant also appears to argue that the ALJ improperly considered the effects of claimant's obesity on his ability to perform work-related activities.[20] An ALJ's duties in evaluating the effect of a claimant's obesity on his residual functional capacity are set forth in Social Security Ruling 02-1p, which states the following:

> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing,

---

[18] Tr. 27 (emphasis supplied).

[19] Tr. 31.

[20] It is a stretch to actually state that claimant made an "argument" on this point. Claimant merely described the requirements of Social Security Ruling 02-1p and stated, "there is nothing to indicate the Plaintiff would obtain any relief by being on or off his feet especially in the context of ongoing work in either posture and ongoing pain, quite apart from the important consideration of morbid obesity." Doc. no. 12 (claimant's brief), at 17. Giving claimant every benefit of the doubt, the court will consider this to be an argument that the ALJ failed to properly consider the effects of claimant's obesity on his other impairments.

11

and pulling. It may also affect ability to do postural functions, such as climbing, balancing, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.

An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.

The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

For a child applying for benefits under title XVI, we may evaluate the functional consequences of obesity (either alone or in combination with other impairments) to decide if the child's impairment(s) functionally equals the listings. For example, the functional limitations imposed by obesity, by itself or in combination with another impairment(s), may establish an extreme limitation in one domain of functioning (*e.g.*, Moving about and manipulating objects) or marked limitations in two domains (*e.g.*, Moving about and manipulating objects

> and Caring for yourself).
>
> As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.

SSR 02-1p, 2000 WL 628049, at *6-7.

The court finds that the ALJ properly considered claimant's obesity under this Ruling. He found claimant's obesity to be one of his severe impairments.[21] He also specifically referenced SSR 02-1p, stating:

> The claimant is also obese. The obesity, while not stated by any physician to be disabling, was considered in terms of its possible effects on claimant's ability to work and ability to perform activities of daily living. Although obesity is no longer a listed impairment, SSR 02-01 provides important guidance on evaluating obesity in adult and child disability claims. The Administrative Law Judge is required to consider obesity in determining whether a claimant has medically determinable impairments that are severe, whether those impairments meet or equal any listing, and determining the claimant's residual functional capacity. Obesity is considered severe when, alone or in combination with another medically determinable physical or mental impairments[*sic*], it significantly limits an individual's physical or mental ability to do basic work activities (SSR 02-01). However, the Administrative Law Judge will not make assumptions about the severity or functional effects of obesity combined with other impairments. While obesity may or may not increase the severity of functional limitations of other impairments, each case will be evaluated solely on the information in the case record. In the present case, the claimant's obesity is not such as to prevent ambulation, reaching, orthopaedic and postural maneuvers, or to prevent him from working or being able to complete a fairly full range of activities of daily living. It does, though, in combination with the osteoarthritis and DVT somewhat reduce his ability to stand and walk, and maintain other postural positions. A reduction in capacity to work

---

[21] Tr. 25.

at the light exertional range with some further appropriate work restrictions is, therefore, warranted. These limitations are accounted for in the residual functional capacity as determined herein; however, they do not impair the claimant to the point where he is unable to perform any work at all . . . .[22]

The court cannot imagine what else the ALJ could possibly do to comply with SSR 02-01p. Because his conclusions also were supported by substantial evidence of record, the ALJ's decision will not be reversed on this ground.

### E.   Conclusion and Order

In summary, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 23rd day of January, 2014.

_____
United States District Judge

---

[22] Tr. 29-30.